**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1860-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TREMAINE L. ADAMS, a/k/a
TREMAINE JACKSON,

     Defendant-Appellant.

_____

Submitted November 5, 2020 – Decided December 18, 2020

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 14-12-1042.

Joseph E. Krakora, Public Defender, attorney for appellant (Durrell Wachtler Ciccia, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Marc A. Festa, Senior Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Tremaine L. Adams appeals from the October 5, 2018 denial of his post-conviction relief (PCR) petition. For the reasons that follow, we vacate the denial of his petition and remand for an evidentiary hearing.

On February 8, 2017, defendant pled guilty to an amended charge of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4. He admitted to fatally shooting his victim, Ismail Walker, with a .38 caliber handgun. Based on his plea bargain, defendant avoided a potential life sentence on his existing charge of first-degree murder, N.J.S.A. 2C:11-3(a). Also, defendant's weapons charges were dismissed in exchange for his plea. Subsequently, the judge imposed a sixteen-year prison term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and ordered defendant to pay restitution, in addition to the standard penalties and fines.

Defendant filed an excessive sentence appeal pursuant to Rule 2:9-11. In March 2017, he timely moved for PCR relief, but his petition was dismissed without prejudice pending the appeal of his sentence. We affirmed defendant's sentence in February 2018, satisfied "the sentence [was] not manifestly excessive or unduly punitive and [did] not constitute an abuse of discretion." In March 2018, defendant refiled his PCR petition.

2

Defendant's PCR petition alleged he received ineffective assistance of counsel. He contended his first attorney had a conflict of interest because the attorney failed to disclose he was married to an employee of the Passaic County Prosecutor's Office, the office prosecuting him. In fact, the wife of defendant's first counsel was an assistant prosecutor in that office.

Additionally, defendant claimed in his PCR petition that his first attorney lost interest in his case, due to the lack of fee payments, and directed another attorney from the same firm to handle defendant's plea and sentence. Defendant also contended he was not guilty of first-degree aggravated manslaughter and would not have pled guilty to this charge if he had effective assistance of counsel. In support of his argument, he submitted a one-paragraph certification dated May 24, 2017, from his co-defendant, Neil Morrison. In part, Morrison's certification stated:

> Tremaine Adams on the day that Ismail Walker died never conspired with me or influenced me to commit any acts that would have contributed to the death of Ismail Walker. Any acts that I have plead guilty to, concerning the death of Ismail Walker were purely the result of my own action . . . . [Defendant] is innocent of any conspiracy, murder, attempted murder, and I, Neil Morrison . . . acted alone in the case of Ismail Walker.

Morrison's certification provided no further details about his involvement in Walker's death.

Defendant was present during oral argument of his PCR petition. PCR counsel stated defendant "felt pressure to accept the plea because he didn't feel his attorney was working with him anymore." She added that defendant provided her "with a certification . . . from Mr. Morrison, where Mr. Morrison is taking responsibility for the crimes. He's saying he tried to tell both attorneys that, but neither one of them did anything about it, so he's arguing that he did not commit these crimes."

After oral argument, the judge reserved decision and directed the parties to return on October 5, 2018. Defendant was not produced for the October 5 hearing, so the judge offered to adjourn the matter. PCR counsel acknowledged defendant's absence but noted the parties already had presented their arguments, and defendant wished to have a decision. Accordingly, counsel waived defendant's appearance. The judge rendered an oral decision without conducting further argument.

The PCR judge first referred to the plea transcript to address defendant's conflict-of-interest argument. The judge confirmed that before defendant provided a factual basis for his plea, plea counsel advised the trial court that the wife of defendant's first attorney

> works in the Prosecutor's Office and [prior counsel]
> believes that he mentioned that to [defendant] in the

4

past, but he doesn't believe that was placed on the record, but he believes that it's important to put on the record that . . . his wife does work in the Prosecutor's Office, in the DV Unit, if I'm not mistaken.

There's no contact or discussion about this particular case or any other case, for that matter, but [defendant] is aware of that and there is no conflict. If you believe there is some conflict, then he waives any other such conflict, but he doesn't believe there's a conflict.

Additionally, the PCR judge reminded defense counsel that before he accepted defendant's plea, he asked defendant if he had any problem with his attorneys' office "continuing with their representation," and defendant responded, "No. Not at all." The judge further confirmed that at the plea hearing, defendant testified he was satisfied with his attorney's services and was "pleading guilty to this charge because [he was] guilty of this charge." Based on these facts, the PCR judge concluded:

even if it was the first time that day, and I don't think that it was, that the defendant heard that his [first] lawyer's wife worked in the Prosecutor's Office, he clearly entered into this plea agreement voluntarily and of his own free will. And he had plenty of time that day to say or to ask me if he could have a few more moments to speak with his lawyer about that issue. He did not.

Additionally, the PCR judge determined defendant benefitted from a "favorable plea bargain" and that neither of his prior attorneys was ineffective.

A-1860-18T4

He stated, "I don't find that different counsel would have made a difference in this case." The judge denied defendant's PCR petition without an evidentiary hearing.

On appeal, defendant presents the following arguments for our consideration:

> POINT I
>
> THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL.
>
>> A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS AND PETITIONS FOR POST-CONVICTION RELIEF.
>>
>> B. THE DEFENDANT DID NOT RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL AS A RESULT OF TRIAL COUNSEL'S FAILURE TO APPEAR FOR PROCEEDINGS HIMSELF, INSTEAD OF SENDING A SUBSTITUTE COUNSEL.

6

A-1860-18T4

C. DEFENDANT SUBMITS THAT THIS CASE REQUIRES AN EVIDENTIARY HEARING TO EXPOSE THE TRUTHS EXPRESSED IN NEIL MORRISON'S AFFIDAVIT.

Defendant also raises the following contentions in his pro se supplemental brief:

POINT I

THIS MATTER MUST BE REMANDED FOR A PLENARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE THAT DEFENSE COUNSEL'S FAILURE TO ADVISE PETITIONER THAT HIS WIFE WAS AN ASSISTAN[T] PROSECUTOR WITHIN THE PASSAIC COUNTY PROSECUTOR'S OFFICE CONSTITUTED A CONFLICT OF INTEREST.

POINT II

A CONFLICT OF INTEREST BETWEEN DEFENSE COUNSEL AND HIS WIFE - A PROSECUTING ATTORNEY OF THE PASSAIC COUNTY PROSECUTOR'S OFFICE - DEPRIVED DEFENDANT OF EFFECTIVE ASSISTANCE OF COUNSEL.

POINT III

THE PCR COURT ERRED IN REFUSING TO SET ASIDE PETITIONER'S CONVICTION ON THE BASIS OF CLEARLY NEWLY DISCOVERED EVIDENCE.

7

1. The new evidence is [m]aterial to the issue of the identity of the perpetrator of the crime and is not merely cumulative, impeaching contradictory.

2. The new evidence was discovered after the plea process and was not discovered by reasonable diligence at the time of the plea process.

3. The Affidavit of Neil Morrison would probably change the results if a new trial were granted.

POINT IV

THE RESTITUTION IMPOSED ON DEFENDANT MUST BE VACATED BECAUSE THE COURT GAVE NO REASONS AND FAILED TO CONDUCT A HEARING ON THE DEFENDANT'S ABILITY TO PAY.

POINT V

PCR COUNSEL WAS INEFFECTIVE BY CONDUCTING THE PCR HEARING IN DEFENDANT'S ABSENCE.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). The de novo standard of review applies to mixed questions of fact and law. Id. at 420 (citing McCandless v. Vaughn, 172 F.3d 255, 265 (3d Cir. 1999)). Where an evidentiary hearing has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421.

A-1860-18T4

A trial court should grant an evidentiary hearing if a defendant establishes a prima facie claim in support of PCR. State v. Preciose, 129 N.J. 451, 462, (1992). When determining whether to grant an evidentiary hearing, the PCR court must consider the facts in the light most favorable to the defendant. Id. at 462-63. The denial of an evidentiary hearing for a PCR petition is reviewed for an abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)).

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee a defendant in a criminal proceeding the right to the assistance of counsel in his or her defense. The right to counsel includes "the right to the effective assistance of counsel." State v. Nash, 212 N.J. 518, 541 (2013) (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)).

In Strickland, the Court established a two-part test, later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), to determine whether a defendant has been deprived of the effective assistance of counsel. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58. Under the first prong of the Strickland standard, a petitioner must show that counsel's performance was deficient. 466 U.S. at 687. It must be demonstrated that counsel's handling of the matter "fell

A-1860-18T4

below an objective standard of reasonableness," and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88.

Under the second prong of the Strickland standard, a defendant "must show that the deficient performance prejudiced the defense." Id. at 687. There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "The error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694).

"With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012) (citing State v. Echols, 199 N.J. 344, 357 (2009); State v. Goodwin, 173 N.J. 583, 593 (2002)). A failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition. Strickland, 466 U.S. at 700; Nash, 212 N.J. at 542; Fritz, 105 N.J. at 52. "To establish a prima facie claim of ineffective assistance of counsel, a defendant must demonstrate the

reasonable likelihood of succeeding under the test set forth in <u>Strickland</u>." <u>Preciose</u>, 129 N.J. at 463.

The federal and state constitutions afford an accused the right to the effective assistance of counsel unhampered by any conflict of interest that adversely affects a lawyer's performance. <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980); <u>State v. Norman</u>, 151 N.J. 5, 23 (1997); <u>State v. Bellucci</u>, 81 N.J. 531, 538 (1980). A defendant should have the undivided loyalty of his or her attorney, <u>State v. Sanders</u>, 260 N.J. Super. 491, 496 (App. Div. 1992) (citing <u>Glasser v. United States</u>, 315 U.S. 60, 70 (1942)), and representation "untrammeled and unimpaired" by conflicting interests, <u>Norman</u>, 151 N.J. at 23 (quoting <u>Bellucci</u>, 81 N.J. at 538). A conflict of interest generally exists under our Rules of Professional Conduct (RPC) if "the representation of one client will be directly adverse to another client," or if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person <u>or by a personal interest of the lawyer</u>." RPC 1.7(a)(1) to (2) (emphasis added).

In the federal courts, the mere "possibility" of a conflict of interest "is insufficient to impugn a criminal conviction." <u>Cuyler</u>, 446 U.S. at 350. "In order to establish a violation of the Sixth Amendment, a defendant who raised

11

no objection [at the trial level] must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Id. at 348.

New Jersey courts, however, have departed from their federal counterparts and "have exhibited a much lower tolerance for conflict-ridden representation under the New Jersey Constitution than federal courts have under the United States Constitution[,]" and have accordingly found that "certain attorney conflicts render the representation per se ineffective[,]" warranting a presumption of prejudice. State v. Cottle, 194 N.J. 449, 470 (2008) (citations omitted). See also State v. Drisco, 355 N.J. Super. 283, 292 (App. Div. 2002) ("New Jersey's constitutional standard thus provides broader protection against conflicts than does the Federal Constitution.").

Under New Jersey's "two-tiered approach in analyzing whether a conflict of interest has deprived a defendant of his state constitutional right to the effective assistance of counsel[,]" courts must first determine whether the alleged conflict is a "per se conflict." Cottle, 194 N.J. at 467. If so, "prejudice is presumed in the absence of a valid waiver, and the reversal of a conviction is mandated." Ibid. If the alleged conflict is not a per se conflict, "the potential or actual conflict of interest must be evaluated and, if significant, a great

likelihood of prejudice must be shown in that particular case to establish constitutionally defective representation of counsel." Norman, 151 N.J. at 25.

The "per se analysis is reserved for those cases in which counsel's performance is so likely to prejudice the accused that it is tantamount to a complete denial of counsel." State v. Savage, 120 N.J. 594, 616 (1990) (citations omitted). See also State v. Miller, 216 N.J. 40, 70 (2013) ("[O]nly an extraordinary deprivation of the assistance of counsel triggers a presumption of prejudice."). For a conflict of interest to trigger a per se deprivation of the right to counsel, there must be an "overriding concern of divided loyalties." Cottle, 194 N.J. at 467 n.8. For these reasons, our Supreme Court "has never presumed prejudice . . . in a situation . . . in which the defendant was represented by competent counsel with no conflict of interest." Miller, 216 N.J. at 60-61.

Courts have generally "limited the per se conflict on constitutional grounds to cases in which 'a private attorney, or any lawyer associated with that attorney, is involved in simultaneous dual representations of codefendants.'" Cottle, 194 N.J. at 467 (quoting Norman, 151 N.J. at 24-25). See, e.g., State ex rel. S.G., 175 N.J. 132, 134-35 (2003) (holding that a law firm's simultaneous representation of a shooting suspect and the estate of the shooting victim constituted an unwaivable conflict of interest); State v. Murray, 162 N.J. 240,

250 (2000) (holding that the defendant made a prima facie showing of a per se conflict warranting an evidentiary hearing, where the attorneys for defendant and a codefendant shared "office space and a phone number"); <u>Bellucci</u>, 81 N.J. at 544 ("Whenever the same counsel -- including partners or office associates-- represents more than one [co]defendant, both the attorney and the trial court must explain the possible consequences of joint representation to each defendant.").

> The Court has considered three factors in determining whether a conflict per se exists or whether the conflict is merely a potential one. The first factor pertains to the extent to which there is ready access to confidential information among the attorneys. []<u>Bellucci</u>, 81 N.J. at 541 . . . . The second factor relates to whether, and to what extent, the attorneys share an economic interest . . . . The third factor concerns whether, and to what extent, public confidence in the integrity of the law profession might be compromised or eroded by permitting the case to proceed notwithstanding the potential for mischief. [<u>State v. Bell</u>, 90 N.J. 163, 168-69 (1982);] []<u>Bellucci</u>, 81 N.J. at 541-42.
>
> [<u>State v. Sheika</u>,[1] 337 N.J. Super. 228, 245-46 (App. Div. 200l).]

---

[1] In <u>Sheika</u>, we analyzed a conflict issue through the prism of RPC 1.8, which has since been amended. Relational conflicts now are addressed in RPC 1.7(a), but we are satisfied the principles enunciated in <u>Sheika</u> stand independent of the RPC 1.8 analysis.

Considering the first prong of this three-factor test, we note defendant's plea counsel represented to defendant and the trial court that "[t]here's no contact or discussion about this particular case or any other case, for that matter, but [defendant] is aware of that and there is no conflict." Plea counsel did not explain the basis for this representation. Regarding the second prong, the record is devoid of any discussion regarding a shared "economic interest" between defendant's first attorney and his wife. Likewise, as to the third prong, there is insufficient information in the record to assess whether the existing relationship between defendant's first attorney and his wife might have compromised or eroded public confidence in the integrity of the law profession.

We decline to find a per se conflict on the facts presented here. However, it is appropriate to remand this matter to permit further exploration of the facts and development of the record so the PCR court can determine "the likelihood of prejudice" to defendant emanating from the relationship between his first attorney and that attorney's wife, recognizing the potential conflict-of-interest issues stemming from this relationship are "myriad, complex and pose a real potential for prejudice." Id. at 246.

It bears repeating that:

> When a defense attorney is faced with a possible conflict of interest in representing [a] client, [that

attorney] should notify the trial court of the potential problem at the earliest possible time. The trial court should conduct a hearing on the record to determine whether a conflict of interest exists. The defendant should be present at the hearing. Depending upon the relevant facts, the defendant should be apprised of the potential problems and pitfalls pertaining to the potential conflict. Specifically, counsel involved in a potential conflict situation . . . should not proceed with the defense without first explaining fully to the accused the nature of the alleged contaminating relationship. [Also, where applicable, t]he prosecution should be required to explain how the assistant prosecutor who is related to the defense attorney will be shielded from having any decisionmaking ability in the case. Such arrangements should be described in detail.

[Id. at 248.]

Here, the record is devoid of any explanation about what steps, if any, were taken to shield the wife of defendant's first attorney from having "any decisionmaking ability" in this case. Although the prosecutor asserted his belief at the PCR hearing that one of the transcripts of defendant's many appearances before the trial court would reveal a conference on the record about defendant's waiver of any potential conflict, no such transcript was produced by the State. Instead, we have only a hearsay statement from defendant's second attorney, advising the trial court that the first attorney "believes that he mentioned" to defendant that counsel's wife "works in the Prosecutor's Office."

Under these circumstances, we are satisfied the trial court mistakenly exercised its discretion by denying defendant's request for PCR relief without an evidentiary hearing.

As our Supreme Court has stated:

> Certain factual questions, "including those relating to the nature and content of off-the-record conferences between defendant and [the] trial attorney," are critical to claims of ineffective assistance of counsel and can "only be resolved by meticulous analysis and weighing of factual allegations, including assessments of credibility." These determinations are "best made" through an evidentiary hearing.
>
> [State v. Porter, 216 N.J. 343, 355 (2013) (quoting State v. Pyatt, 316 N.J. Super. 46, 51 (App. Div. 1998))].

Although this matter is remanded for an evidentiary hearing on the conflict issue, we recognize that in challenging his conviction, defendant does not fully explain why he turned himself in to law enforcement in May 2014, accompanied by his first counsel, and confessed to killing Walker. Nor does he fully clarify why, if he knew Morrison was arrested for the same murder weeks after defendant was arrested, defendant agreed to the State's plea offer and never formally moved to withdraw his plea. Mindful that these and issues regarding the alleged conflict will be explored at the evidentiary hearing, and aware the wife of defendant's first attorney now is a sitting judge in Passaic County, we

17

leave it to the discretion of the Assignment Judge to determine if the hearing should be conducted in a venue other than Passaic County.

Regarding Neil Morrison's certification, we observe the PCR judge did not make any findings on this issue. Further, we note defendant argues on appeal that the content of his codefendant's certification constitutes "newly-discovered evidence." However, during the PCR hearing, he asserted through PCR counsel that he previously told his first attorney and plea counsel Neil Morrison was "taking responsibility for the crimes . . . but neither one of them did anything about it." On remand, the PCR court should address defendant's claim, determining whether it can be resolved on the existing record or whether an evidentiary hearing is required.

A judge may relieve a party from a final judgment for "newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49." R. 4:50-1(b). However, to justify a new trial, the judge must find the evidence would likely change the result of the case if a new trial is granted. DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 264 (2009); Quick Chek Food Stores v. Twp. of Springfield, 83 N.J. 438, 445 (1980).

A-1860-18T4

Regarding Point IV, defendant claims for the first time on appeal that the restitution component of his sentence must be vacated, as the sentencing judge did not assess defendant's ability to pay same. We are not persuaded.

The record reflects that prior to defendant's plea, defense counsel discussed a "central amount" defendant would pay. Thereafter, defendant testified he accepted the State's demand to "make restitution for funeral expenses and any other expenses that have arisen as a result of [his] actions." Because defendant did not contest his responsibility for restitution during the plea hearing or sentencing, nor, more importantly, on direct appeal, we are satisfied his restitution argument is procedurally barred under Rule 3:22-4.

Finally, we are satisfied Point V of defendant's pro se brief requires little comment, given our decision to remand this matter. However, we would be remiss if we did not acknowledge the PCR judge appropriately offered to reschedule the October 5, 2018 hearing when defendant was not produced. PCR counsel declined the offer, noting oral argument previously was conducted and defendant wanted a decision. Since no further argument was conducted before the PCR judge rendered his oral decision, and defendant fails to explain how his absence from that hearing prejudiced him, we are not persuaded defense

19

counsel's decision to waive his appearance amounts to ineffective assistance of counsel under Strickland.

Vacated in part, and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1860-18T4